# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCED IRRIGATION DISTRICT, a California Irrigation District,<br><br>                Plaintiff,<br><br>        v.<br><br>COUNTY OF MARIPOSA, a political subdivision of the State of California,<br><br>                Defendant.<br>_____/ | CASE NO. 1:12-cv-01645-LJO-SKO<br><br>**ORDER ADOPTING THE MARCH 4, 2013, FINDINGS AND RECOMMENDATIONS**<br><br>(Doc. 27)<br><br>**ORDER GRANTING MERCED IRRIGATION DISTRICT'S MOTION TO REMAND**<br><br>(Doc. 13) |

## I. INTRODUCTION

Plaintiff Merced Irrigation District ("MID") filed a declaratory relief action against the County of Mariposa ("Mariposa") in Merced County Superior Court on September 5, 2012. On October 5, 2012, Mariposa removed Plaintiff's declaratory relief action to this Court. (Doc. 1.) On November 2, 2012, MID filed a motion to remand the action to Merced County Superior Court. (Doc. 13.) Mariposa filed a brief in opposition to MID's motion on December 5, 2012, and MID filed a reply brief on December 12, 2012. On December 18, 2012, U.S. Magistrate Judge Sheila K.

Oberto ordered the parties to submit additional briefing. On January 4, 2013, Mariposa filed a supplemental brief and on January 15, 2013, MID filed a supplemental brief. (Docs. 24, 25.)

On March 4, 2013, the Magistrate Judge issued Findings and Recommendations ("F&Rs") recommending that MID's motion to remand be granted. (Doc. 27.) The parties each filed objections to the F&Rs on March 28, 2013 (Docs. 33, 34), and each filed responses to the other's objections on April 11, 2013 (Docs. 36, 37).

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C), this Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the Court concludes that the Magistrate Judge's F&Rs are supported by the record and proper analysis; for the reasons set forth below, the March 4, 2013, F&Rs are ADOPTED, MID's motion to remand is GRANTED, and the case shall be remanded to the Merced County Superior Court.

## II.   DISCUSSION[1]

### A.   MID's Objections

MID objects to the portions of the F&Rs that determined MID's complaint fairly anticipated state law claims for anticipatory breach and breach of the implied covenant of good faith and fair dealing. MID argues that the only claim anticipated by its complaint is one for breach of contract relevant to the payment provisions under Paragraph 3 of the 1960 Agreement.[2] The hypothetical state law causes of action posed by Mariposa "could only arise as a counterclaim or rejoinder by [Mariposa], premised on the affirmative defenses set up by the District's complaint for declaratory relief." (Doc. 33, 2:17-20.) As it pertains to a claim for anticipatory breach of Paragraph 4 of the parties' 1960 Agreement, MID has not opposed any application by Mariposa to the State Water Resources Control Board. Moreover, MID contends that there is no actual repudiation of the parties' contract such that Mariposa has any anticipatory breach claim or implied covenant claim, and none of the allegations in its declaratory relief complaint can themselves give rise to such claims.

---

[1] The factual background and applicable legal standards were set forth at length in the F&Rs, and they will not be restated here. (*See* Doc. 27, 2:5-13:2.)

[2] The parties' 1960 Agreement is attached as Exhibit A to MID's complaint. (Doc. 1-1, Exhibit A.) The parties' 1990 Agreement is attached as Exhibit D to Mariposa's request for judicial notice in support of its opposition. (Doc. 21-7, Exhibit D.)

Mariposa filed a response to MID's objections, asserting that MID is incorrect in its argument that Mariposa's coercive claims for anticipatory breach and breach of the implied covenant would not arise *but for* MID's declaratory relief action and would only arise as counterclaims or rejoinders to MID's defenses in the declaratory relief action. Mariposa asserts that MID has made statements publicly before the Federal Energy Regulatory Commission ("FERC") prior to filing its declaratory relief action that due to the National Wild and Scenic Rivers Act ("WSRA") Mariposa "can exercise no more than the 5,000 [acre feet ("AF")] it was separately allocated under the 1990 Agreement for the Saxon Creek Project, and that MID's payment obligations are capped by the cost of that product due solely to the enactment of the WSRA." (Doc. 37, 3:21-23.)[3] Thus, the repudiation of Mariposa's water allocation rights did not arise as a result of MID's complaint, and Mariposa's claims in this regard are not simply rejoinders to MID's defenses as stated in its declaratory relief complaint.

MID's objections are not persuasive. Mariposa is correct that its hypothesized claims for anticipatory breach and breach of the implied covenant do not arise *but for* the filing of MID's complaint. MID's statements to FERC and to Mariposa itself prior to the litigation can be construed as a repudiation of Mariposa's allocation rights under Paragraph 1 of the 1960 Agreement. Mariposa also argues that by entering into Paragraph 4 of the 1960 Agreement, MID impliedly agreed that it would not take a position effectively foreclosing Mariposa's right to apply for a permit from the State Water Resources Control Board ("SWRCB") or any other regulatory agency. As demonstrated in Mariposa's opposition, the documents filed in support of Mariposa's opposition, and Mariposa's brief and materials filed in response to MID's objections, Mariposa's hypothetical state law claims were not precipitated by MID's declaratory relief complaint. Further, the Court does not construe the Magistrate Judge's discussion of the allegations in MID's complaint as a finding that Mariposa's

---

[3] Mariposa's response to MID's objections contains a request for judicial notice of a portion of MID's final "FERC Application for New License Major Project – Existing Dam, for Merced River Hydroelectric Project, FERC Project No. 2179." (Doc. 37-2, Exhibit F.) The document is judicially noticeable for its existence and content pursuant to Federal Rule of Evidence 201, and MID has not objected to Mariposa's request for judicial notice. Mariposa's request for judicial notice of these documents is GRANTED.

3

hypothetical claims arose *out of or because of* the complaint, but reflect consideration of how MID's declaratory relief complaint fairly anticipated such state law claims.

**B.     Mariposa's Objections**

   **1.     Mariposa's Hypothetical Federal Claims**

Mariposa argues that it has potential federal claims against federal agencies under Section 7 of the WSRA and the National Environmental Protection Act ("NEPA") pursuant to the Administrative Procedure Act ("APA"). The Magistrate Judge found that Mariposa's hypothetical federal claims could not confer federal-question jurisdiction:

> [H]ypothetical coercive claims (1) adverse to a federal agency that is not the declaratory judgment plaintiff (MID), (2) challenging a hypothetical federal agency decision where agency proceedings have either not been initiated (*e.g.,* under Section 7 of the WSRA) or have not been completed (*e.g.* FERC relicensing proceedings) such that they could be considered final and ripe for purposes of judicial review, and (3) that involve issues that are beyond the scope of what is fairly anticipated by the declaratory judgment complaint, do not confer federal-question jurisdiction on the Court.

(Doc. 27, 25:11-17.)

Mariposa objects to each of these findings asserting that (1) its federal claims are fairly anticipated by MID's declaratory relief complaint; (2) MID would most likely assert that it was a necessary party to any action Mariposa brought against a federal agency under the WSRA or NEPA, and, under Federal Rule of Civil Procedure 19, MID would be included as a necessary party; (3) its hypothetical APA claim under the WSRA or NEPA would be ripe under the test applied by the Ninth Circuit in *San Luis & Delta-Mendota Water Authority v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) ("*San Luis*"); and (4) its hypothetical challenge to FERC's decision on MID's pending application is required to be heard in a federal court of appeals which underscores the need for federal jurisdiction over MID's state law declaratory judgment complaint.

Whether MID may be a necessary party to any future hypothetical challenge to a federal agency decision under Section 7 of the WSRA or pursuant to NEPA is irrelevant in light of the ripeness and finality issues noted by the Magistrate Judge. Mariposa asserts that its hypothetical APA claim under the WSRA or NEPA is ripe under the test applied by the Ninth Circuit in *San Luis*, 638 F.3d at 1173. In *San Luis*, the Ninth Circuit applied the ripeness test articulated by the Supreme

4

Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), which determined ripeness based on the fitness of the issues for judicial decision and the hardship of the parties of withholding court consideration. Mariposa argues that the situation here is identical to that in *San Luis* because MID's declaratory judgment complaint has interfered with Mariposa's ability to utilize WSRA Section 7. Specifically, Mariposa argues that MID has articulated a concrete plan to use Mariposa's water to expand its power generation capacity and has sought intervention to terminate Mariposa's rights as a matter of federal law.

Even if the *Abbott Laboratories* ripeness analysis applied in *San Luis* applies here, the outcome of such an analysis would not favor Mariposa. In *San Luis*, agricultural interests receiving water from a federal/state water project challenged an Endangered Species Act ("ESA") biological opinion issued to the water project operators. 638 F.3d at 1168. The district court found plaintiffs' challenge under ESA § 7 (the statutory provision requiring issuance of biological opinions) ripe, but dismissed a parallel claim brought under ESA § 9 (which makes it unlawful to "take" listed species without a permit) on the ground that there was no threat that § 9 would be enforced against the plaintiffs. 638 F.3d at 1168-69. The Ninth Circuit reversed as to the § 9 claim, reasoning that the "pre-enforcement" ripeness analysis should not apply. Rather, applying the *Abbott Laboratories* test, the Ninth Circuit concluded:

> First, the challenge is fit for judicial review because further factual development would not significantly advance the Court's ability to deal with the legal issues presented. . . . Second, the Growers will suffer hardship if the court withholds consideration because the Service's continued power to enforce ESA § 9 imposes a significant practical harm upon the Growers.

*Id.* at 1173 (finding the § 9 claim ripe).

Mariposa argues that application of this test favors a finding of ripeness here. But, Mariposa confuses and oversimplifies the relevant inquiry by arguing: "The only issue before the court, whether the WSRA entirely terminates Mariposa's water rights by precluding its ability to obtain a permit, is a pure issue of federal law that MID wants decided before its FERC license renewal." (Doc. 34, 9:12-15). That is not the "issue" to be considered in the *Abbott Laboratories* inquiry. Here, the hypothetical APA claims would be premised upon a hypothetical refusal of a federal agency to grant Mariposa permission to pursue an entirely hypothetical specific water project. Even assuming

5

the project was defined, there is no way to know on what grounds permission to proceed would be denied. Only if the federal agency outright refused to consider the petition on the ground that no such permission could ever be granted would the question posed by Mariposa be presented to this Court in an APA claim. Further factual development would not only "significantly advance the Court's ability to deal with the legal issues presented," it is absolutely necessary. Mariposa's hypothetical APA claims are not ripe and therefore cannot provide removal jurisdiction.

Additionally, as the Magistrate Judge noted, there is no final agency decision to challenge under the APA with respect to Section 7 proceedings under the WSRA or NEPA because no agency proceedings have been initiated.[4] As federal courts are required to strictly construe jurisdictional statutes, and doubt is to be resolved in favor of remand, the Court concludes that there is no APA claim that confers subject matter jurisdiction under these circumstances. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

With respect to MID's FERC licensing proceedings, Mariposa asserts it may have a future federal claim challenging the FERC determination. Mariposa argues that a state court has no interest, familiarity, or jurisdiction related to FERC, and contract litigation that may affect a FERC determination belongs in federal court. (Doc. 34, 14:2-22.) Despite that a federal district court has no subject matter jurisdiction over challenges to FERC decisions,[5] Mariposa argues its hypothetical challenge to a future FERC decision should confer the district court with jurisdiction. The mere fact that the parties' contractual dispute may affect a future FERC determination does not provide <u>this</u> Court with subject matter jurisdiction over the future FERC decision. Mariposa's objection in this regard provides no basis to conclude that the Magistrate Judge erred in finding that a hypothetical FERC challenge could not confer the district court with subject matter jurisdiction.

---

[4] There is also no factual basis to claim that an agency has unlawfully withheld or delayed a decision. *See* 5 § 706(1) (providing relief for "agency action unlawfully withheld or unreasonably delayed").

[5] *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) ("By its express language, the Act provides *exclusive* jurisdiction of the Courts of Appeals to review and make substantive modifications to FERC licensing orders.").

6

### 2. Mariposa's Hypothetical Anticipatory Breach Claim – Paragraph 3

In its opposition, Mariposa claims to have two anticipatory breach claims. The first based on the payment provision in Paragraph 3 of the 1960 Agreement, and a second claim predicated on Mariposa's right to the 70,000 AF of water under Paragraph 1 of the 1960 Agreement (as renegotiated in 1990) in conjunction with MID's obligation under Paragraph 4 not to oppose any application or permit for which Mariposa applies with respect to the water allocation in Paragraph 1. Mariposa objects to the Magistrate Judge's finding that it has an alternative theory of recovery not dependent on federal law as to its first hypothetical claim for anticipatory breach regarding MID's payment obligations under Paragraph 3, arguing that the payment obligations of the 1960 Agreement represent only half of Mariposa's rights" under the contract, with its 70,000 AF water right defined in Paragraph 1 making up the other half. (*See* Doc. 34, 11:1-2.)

Mariposa's hypothesized anticipatory breach claim with regard to MID's payment obligations under Paragraph 3 is separate from its potential anticipatory breach claim with respect to its water diversion rights under Paragraph 1 and MID's obligations under Paragraph 4. The Magistrate Judge analyzed the claims separately and did not conclude that anticipatory breach claim with respect to the water diversion rights under Paragraph 1 or MID's obligations under Paragraph 4 could be resolved on an alternative theory. Mariposa's objections in this regard are without merit.

### 3. Mariposa's Hypothetical Anticipatory Breach Claim – Water Allocation under Paragraph 1 and MID's Obligations under Paragraph 4

Mariposa's opposition brief asserts that the element of its hypothetical anticipatory breach claim resulting from MID's interference with a potential attempt by Mariposa to develop a "water resources project" on the South Fork depends on establishing Mariposa's ability to perform under the WSRA. (Doc. 21, 26:14-19 ("Because the element of Mariposa's 'ability to perform' in an action for anticipatory breach relating to MID's attempt to prevent Mariposa from utilizing its water allocation for a 'water supply project' on the South Fork [of the Merced River] rests on this Court's interpretation of federal law . . . such a claim would necessarily raise a federal issue that is actually disputed.").)

The Magistrate Judge determined that a claim for anticipatory breach would not require Mariposa to show it could perform under the WSRA. In its objections, Mariposa asserts that it would be required to prove how MID's excuse for non-performance was without legal cause. This does not address the fact that a defendant's excuses for non-performance are affirmative defenses and proof of those issues lie with the defendant – Mariposa's responses to MID's affirmative defenses are simply rejoinders and not a necessary element of Mariposa's claim. While a plaintiff has a duty to plead its own performance or excuse for the failure to perform, it does not have to prove or plead how the defendant's excuse for non-performance was not justified. *Transmarine Corp. v. R.W. Kinney Co.*, 123 Cal. App. 411, 421 (1932) (A plaintiff need not anticipate or negate any defense or counterclaim on the part of the defendant (citing 21 Cal. Jur. 61-63)).

Mariposa also asserts that it will be required to show causation and establish its damages, which necessarily implicate the WSRA as the statute will govern the amount of water that could be diverted from the South Fork and the calculation of damages. This argument, however, is raised for the first time in the objections and provides no explanation of how damages or causation are necessarily tied to an interpretation of the WSRA. MID's *reason* for repudiating Mariposa's right to the water allocation under Paragraph 1 or objecting to any application or request by Mariposa to use the water is not an aspect of showing that MID caused Mariposa damage. Further, even if the WSRA were somehow relevant to calculating the amount of Mariposa's damages or the causation analysis, it would be so fact-specific to this dispute that it would not qualify as a substantial federal issued under *Grable & Sons Mental Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

### 4. Implied Covenant of Good Faith and Fair Dealing

Mariposa objects to the Magistrate Judge's findings and conclusion that the federal issue arising in a potential breach of the implied covenant claim would not be substantial under *Grable*. Mariposa argues that the WSRA would be interpreted as a pure question of law in deciding such a claim, and that interpretation would be fully dispositive of MID's bad faith.

Mariposa's theory of MID's alleged breach of the implied covenant is somewhat amorphous. In its opposition, Mariposa explained its potential claim for breach of the implied covenant as predicated "on MID's long-time recognition of Mariposa's right to deplete MID's water allocation

(including its formal recognition in the 1990 Agreement), and MID's recent assertion that the []WSRA prohibits Mariposa's exercise of those rights." (Doc. 21, 24:19-22.) In its response to MID's objections, Mariposa articulates its claim differently, asserting that by entering into Paragraph 4 of the 1960 Agreement, "MID impliedly agreed that it would not take a position effectively foreclosing Mariposa's right to apply for a permit from the SWRCB or any other regulatory agency." (Doc. 37, 6:1-3.)

Mariposa characterizes MID's position as an assertion that the WSRA has no regulatory process for approval of a diversion project on the South Fork, which is an unreasonable interpretation as a matter of law. Mariposa cites *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 973-74 (2003), and argues that where the analysis of bad faith turns on the reasonableness of the legal argument advanced, it presents a pure question of law that depends entirely on an analysis of legal precedent and statutory language. Therefore, the only question that would arise in its breach of the implied covenant claim would be a matter of law determination regarding the interpretation of the WSRA and whether any reasonable person could interpret it as MID has done. The issue, therefore, is not fact-specific, and it involves a pure interpretation of law which is dispositive to the claim.

The bad-faith analysis in *Morris* – the reasonableness of insurer's legal position in erroneously interpreting the policy language – is an unworkable analogy here. *Morris* involved a matter-of-law coverage determination[6] that led to an improper denial of a claim (and, therefore, a breach of the contract). The only question remaining in that case was whether the legal interpretation that led to the breach of the contract could be construed as reasonable – e.g., the law was unsettled and there were competing interpretations of the policy language that supported a "genuine dispute."

Unlike the insurer's legal interpretation of the policy language in *Morris*, MID's interpretation of the WSRA is not a construction or interpretation of the terms of the parties' contract nor does it establish as a matter of law the nature of the implied duties arising from the contract. In other words,

---

[6] *Century Transit Systems, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 125 (1996) ("Absent any factual dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law.")

9

whether MID had an implied duty under the contract, whether that duty was breached by certain conduct, and whether that conduct was objectively unreasonable cannot be determined only by an interpretation of the WSRA.

Further, although Mariposa characterizes MID's interpretation of the WSRA as reading Section 7 out of the statute, it is not clear this is actually MID's position. MID has communicated to Mariposa[7] and to FERC[8] that the WSRA precludes further water diversions by Mariposa from the Merced River. MID has not pointed to any particular language in the WSRA that requires this as a matter of law, nor has MID claimed that Mariposa cannot seek an exemption under Section 7 of the WSRA. MID's assertion with respect to the WSRA could be construed as an argument that the restrictions imposed by the WSRA, the water acreage at issue in the parties' contract, and the specific conditions on the South Fork of the Merced River make it impossible as a practical matter for Mariposa to build a water resources project on the South Fork, which in turn affects the parties' contract. This is not necessarily an argument that Mariposa cannot seek federal agency approval of a water resources project under Section 7 or that the WSRA precludes every water resource project on a wild-and-scenic river as a matter of law. Testing the objective reasonableness of such a position, even if erroneous, would not be predicated only on a matter-of-law interpretation of the WSRA. Further, determination of the implied duties under the contract as well as any conduct breaching that duty would arguably involve factual issues. The Court agrees with the Magistrate Judge's findings that Mariposa's hypothetical claim for breach of the implied covenant would not be necessarily decided by a matter-of-law interpretation of the WSRA, and the resolution of the claim would be situation specific and fact bound.

Mariposa also contends that the U.S. Supreme Court's recent decision in *Gunn v. Minton*, __ U.S. __, 133 S.Ct. 1059 (2013), undercuts the Magistrate Judge's reliance on *Empire Healthchoice Assurance v. McVeigh* ("*Empire*"), 547 U.S. 677, 699 (2006), *Adventure Outdoors, Inc. v.*

---

[7] *See* Doc. 1-1, ¶ 38.

[8] *See* Doc. 37-2, p. 5 (MID's response to Mariposa's comment that MID's FERC application fails to mention Mariposa's depletion rights: "The 'potential depletion' to which this Comment refers would be limited, even if otherwise feasible and permissible, to 5,000 acre-feet per year under current law (16 U.S.C. § 1274(a)(62)(B), 1278(a)) and would have no material effect on operations.")

*Bloomberg* ("*Adventure Outdoors*"), 552 F.3d 1290 (11th Cir. 2008), and *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc), in finding that the substantiality of the WSRA's application in a claim for breach of the implied covenant did not meet the standard articulated in *Grable*.

In *Gunn*, the Court considered whether a state law claim for malpractice as it related to an attorney's conduct in separate patent litigation necessarily raised a disputed and substantial issue of federal patent law such that the federal court had exclusive jurisdiction under 28 U.S.C. § 1338(a). *Id.* at 1063. In holding that the patent issue presented by the malpractice claim was not substantial under *Grable*, the Court noted that the Texas Supreme Court, from which certiorari was granted, had erroneously focused on the importance of the issue to the plaintiff's case and the parties before it. *Id.* at 1066. The Court reasoned that a necessary and disputed federal issue will always be significant and substantial to the particular parties in the immediate suit. *Id.* The Court emphasized that the *Grable* analysis, however, requires that the inquiry focus on the importance of the issue to the federal system as a whole, as opposed to merely the importance to the parties in the case. *Id.*

The substantiality analysis undertaken in the F&Rs specifically examined to what extent an interpretation of the WSRA as applied in a claim for breach of the implied covenant would have importance to the federal system as a whole. The Magistrate Judge noted that no federal agency was involved in this matter nor was a federal agency's actions at issue, there was no authority offered for the proposition that any federal agency would be bound by a court decision on a bad faith contract claim, and the claim determination would be fact-bound and situation specific such that it was unlikely to have broad application to litigants everywhere, all in contrast to *Grable*. This is precisely the importance-to-the-federal-system analysis that *Gunn* held *Grable*'s analytical framework requires.

In arguing the importance of an interpretation of the WSRA to the federal system, Mariposa does not establish how a determination of a claim for breach of the implied covenant would have the sweeping impacts Mariposa predicts.[9] As already noted, there is no authority offered establishing how a state-court interpretation of the effects of the WSRA on the parties' contract obligations as

---

[9] Mariposa's theory of breach of the implied covenant has been articulated differently over the course of the briefing making it somewhat difficult to consider the precise contours of the hypothesized claim.

11

1  related to claim for breach of the implied covenant would be binding on any federal agency, or
2  another court interpreting and applying the WSRA, or parties in other cases.

3        Similarly, Mariposa raises concerns as to what effects would be felt by the federal system if
4  the state court incorrectly, in its view, resolved the issue. Beyond that an interpretation of the WSRA
5  inside a claim for breach of the implied covenant would not have foreseeable binding effects on other
6  litigants, federal courts, or federal agencies, the *Gunn* decision rejected similar arguments. In *Gunn*,
7  Minton argued that state courts' answers to hypothetical patent issues could have real-world effects
8  on other patents through issue preclusion. *Gunn*, 133 S.Ct. at 1067-68. The Court reasoned that it
9  was unclear whether such a preclusive effect could occur, but even to the extent that it did, the result
10 would be limited to the parties and the patents before the state court. *Id.* The Court concluded that
11 such a fact-bound and situation-specific effect was not sufficient to establish arising under
12 jurisdiction. *Id.* Here, the Magistrate Judge noted the lack of authority to suggest that a fact-bound
13 claim for breach of the implied covenant, even to the extent it considered MID's interpretation of the
14 WSRA, would have binding and far-reaching effect on litigants elsewhere.

15       The Court in *Gunn* also rejected Minton's suggestion that the federal courts had greater
16 familiarity with patent law and an interest in the uniformity of the development of patent law such
17 that the case belonged in federal court. *Id.* at 1068. The Court noted that state courts could "be
18 expected to hew closely to pertinent federal precedents" in deciding a hypothetical issue of patent
19 law, and that the possibility that the state court would incorrectly resolve the claim was not enough
20 to trigger the federal court's exclusive patent jurisdiction, even to the extent that the error "finds its
21 root in a misunderstanding of patent law." *Id.* Although the patent law to be decided by the state
22 court in *Gunn* was a purely hypothetical determination for purposes of the malpractice claim at issue,
23 this reasoning applies here as well. Federal courts do not have exclusive jurisdiction over
24 interpretations of the WSRA, and as the Magistrate Judge noted, state courts are competent to
25 interpret and apply federal law, and would be guided by relevant federal court interpretations of the
26 statute. *Id.* at 1067 (citing *Rafflin v. Levitt*, 493 U.S. 455, 465 (1990) ("State courts adjudicating civil
27 RICO claims will . . . be guided by federal court interpretations of the relevant federal criminal
28 statutes, just as federal courts sitting in diversity are guided by state court interpretations of state

law")). The F&Rs consideration of *Grable*'s substantiality prong is fully consistent with the Supreme Court's decision in *Gunn*.

### III. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. For the reasons set forth above, the March 4, 2013, F&Rs are ADOPTED IN FULL;
2. Merced Irrigation District's Motion to Remand pursuant to 28 U.S.C. § 1447(c) is GRANTED;
3. The Clerk of Court is DIRECTED to serve a copy of this order on the Merced County Superior Court; and
4. This case shall be administratively closed.

**SO ORDERED**
**Dated: April 23, 2013**

                                            **/s/ Lawrence J. O'Neill**
                                            **United States District Judge**